UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MICHAEL WILLIAM ELLIS,

   Plaintiff,           Case No.  1:15-cv-726

v.

                    HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,
_____/

## OPINION

   This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Michael Ellis seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

   The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 40 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.83, 93.) He left school in the eleventh grade, obtained a GED, and was previously employed as a roustabout foreman and sub-contractor. (PageID.157, 292.) Plaintiff applied for benefits on October 11, 2012, alleging that he had been disabled since December 28, 2011, due to carpal tunnel syndrome, a bulging disc injury, a herniated disc, lumbar spine impairment, severe back pain, hip pain, depression, and ulnar nerve pain in his elbows. (PageID.176–77, 272–73.) Plaintiff's application was denied on March 12, 2013, after which time he requested a hearing before an ALJ. (PageID.198–209.) On March 6, 2014, Plaintiff appeared

with his counsel before ALJ Dawn Gruenburg for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.153–174.) In a written decision dated March 30, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.83–103.) On May 13, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.34–39.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Gruenburg determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (PageID.88.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease status post surgery; (2) bilateral carpal tunnel syndrome; and (3) bilateral ulnar neuropathy. (PageID.88.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.90–91.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except he requires an option to alternate between sitting and standing at will. The claimant can frequently, as opposed to constantly, handle and finger with his nondominant upper extremity. Additionally, the claimant can frequently balance, kneel, and crouch. However, the claimant can only occasionally stoop, crawl, and climb stairs, and he can never climb ladders. The claimant must also avoid concentrated exposure to vibration and workplace hazards.

(PageID.91.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.97.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could

perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform the following work: inspector (1,200 regional jobs and 50,000 national jobs), final assembler (1,100 regional jobs and 50,000 national jobs), and surveillance system monitor (1,100 regional jobs and 49,000 national jobs). (PageID.171.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.99.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from December 28, 2011, through March 20, 2014, the date of the decision. (PageID.99.)

## DISCUSSION

On October 21, 2015, the Court filed a Notice in this case regarding the filing of briefs. That Notice, in relevant part, stated: "Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand." (PageID.950.) While Plaintiff's brief does contain headings setting forth the general arguments made in his brief, it does not do so in the requisite specificity.[2] Accordingly the Court must frame the issues for review. The Court finds Plaintiff has presented the following claims of error:

1. The ALJ erred in failing to give controlling weight to the opinion of Dr. Richard E. Hodgeman, but even if the ALJ did not err in failing to give controlling weight to Dr. Hodgeman's opinion, the ALJ failed to properly apply the factors for considering medical opinions listed in 20 CFR 404.1527;

2. The ALJ failed to provide a narrative discussion of the RFC, in violation of SSR 96-8p; and

3. The ALJ failed to properly evaluate Plaintiff's credibility.

---

[2]Plaintiff's counsel is advised that future briefs failing to provide a Statement of Errors, as required, may be stricken.

**1.**

On November 7, 2012, Dr. Richard Hodgman filled out a worksheet entitled "Multiple Impairment Questionnaire." (PageID.408–415.) Among other things, Dr. Hodgman opined that if Plaintiff was placed in a normal work day environment, he could only sit for zero to one hour, and stand or walk for zero to one hour as well. (PageID.410.) Plaintiff could only occasionally lift up to ten pound weights, and only occasionally carry up to five pound weights. (PageID.411.) Plaintiff was "essentially precluded" from using his upper extremities for grasping, turning, or twisting objects, and using his arms for reaching. (PageID.411–12.) While Dr. Hodgman opined that Plaintiff's conditions did not interfere with his ability to keep his neck in a constant position, he opined that Plaintiff could not perform a job that required such an activity on a competitive basis. (PageID.412–13.) Plaintiff would further require unscheduled breaks, and could be expected to be absent from work more than three times a month. (PageID.413–414.) Finally, Dr. Hodgman indicated that Plaintiff would need to avoid temperature extremes as well as heights, and could do no pushing, pulling, kneeling, bending, or stooping. (PageID.414.) That same day, Dr. Hodgman indicated that Plaintiff was unable to perform any employment at this time.[3] (PageID.417.) Plaintiff claims the ALJ failed to give controlling weight to Dr. Hodgman's opinion.

---

[3]The record contains several other similar notes from Dr. Hodgman stating that Plaintiff was unable to work. On August 13, 2012, Dr. Hodgman reported that Plaintiff was off work for a year. (PageID.465, 589.) On January 7, 2013, Dr. Hodgman repeated his prior statement that Plaintiff was unable to perform any employment at this time. (PageID.636.) On January 14, 2013 and February 4, 2013, Dr. Hodgeman restated his earlier opinion that Plaintiff was limited to lifting ten pounds, and needed to avoid repeated bending, twisting, and stooping. (PageID.643, 651.) The record also contains two further opinions from Dr. Hodgeman that are similar to his November 7, 2012 opinion. (PageID.917–18, 944–49.) The Court notes, however, that these opinions were not before the ALJ.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart,* 710 F.3d at 375–76 (quoting 20 C.F.R. § 404.1527). It is undisputed Dr. Hodgman qualifies as a treating source.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (*citing Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's

opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

The ALJ began by noting that to the extent Dr. Hodgman opined Plaintiff was disabled and could not return to work, such was an issue that was reserved to the Commissioner. (PageID.96.) The ALJ went on to give the remaining opinions of Dr. Hodgman's opinions "little weight . . . because the substantial limitations he proposed are inconsistent with the medical evidence and the record as a whole, including Dr. Hodgman's own clinical examination findings, the claimant's history of symptomatic improvement, and the claimant's reported activities of daily living. (PageID.96.)

The ALJ correctly noted that Dr. Hodgman's predictions of how often Plaintiff would likely miss work was conjecture, not a medical opinion. *See Murray v. Comm'r of Soc. Sec.*, No. 1:10–cv–297, 2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Accordingly the ALJ was required only to "'explain the consideration given to the treating sources opinion.'" The opinion, however, "'is not entitled to any particular weight.'" *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010)).

Regarding Dr. Hodgman's remaining opinions, the ALJ's bare statement that they were inconsistent with the medical evidence and the record as a whole cannot constitute a good reason for discounting the opinion. It is precisely the type of language the Sixth Circuit found insufficient to permit meaningful review. *Gayheart*, 710 F.3d at 376–77. The Commissioner's discussion on this point is the analysis the ALJ should have undertaken in the first instance. Even

8

though this statement, on its own does not suffice, the Court finds the remaining reasons articulated by the ALJ–Dr. Hodgman's treatment notes, Plaintiff's improvement, and Plaintiff's activities of daily living–are sufficiently specific to allow for judicial review, and constitute good reasons for giving less than controlling weight to Dr. Hodgman's opinion.

In June 2012, Plaintiff underwent a decompressive laminectomy and fusion at the L4-5 vertebrae in his lumbar spine. (PageID.374–375.) Plaintiff began treating with Dr. Hodgman on August 13, 2012. At that meeting, Plaintiff stated his pain from the L3 through L5 vertebrae was eighty percent gone since the surgery, but he had a "burning" sensation, especially when driving for more than thirty minutes or with extended walking. Despite his report of relief, Plaintiff rated his pain severity at a seven on a scale from zero to ten. (PageID.466.) On exam, Plaintiff's lumbar spine was tender, with moderate pain on motion. He had an antalgic gait, but his lower extremities had normal strength and deep tendon reflexes. (PageID.467.) Dr. Hodgman noted that Plaintiff needed an EMG for his carpal tunnel syndrome, and increased Plaintiff's fentanyl prescription. (PageID.467–68.) Later that month, Plaintiff's pain was twenty percent better. (PageID.463.) His sleep was improved, and Plaintiff was able to watch a movie through to completion. (PageID.463.) On August 22, 2012, Plaintiff complained to Dr. Hodgman of decreased mobility, numbness, popping, and weakness in both his wrists, however on exam there was no swelling or tenderness, and full range of motion. (PageID.452–53.) On September 4, 2012, Plaintiff reported an improvement of fifteen to twenty percent. Walking for more than twenty minutes and driving were described as factors that increased Plaintiff's pain, though even then the pain was described as "not extrusiating" [sic]. (PageID.448.) On October 17, 2012, Dr. Hodgman noted that there was not

much pain in Plaintiff legs, except if he walked for more than fifteen minutes or rode in a car for twenty-five minutes. (PageID.426.)

The records after Dr. Hodgman rendered his opinion demonstrate continued improvement. Plaintiff underwent a series of nerve block injections to which Plaintiff had a "[g]ood response." (PageID.902.) Plaintiff stated this gave him improved movement, but no decrease in pain. (PageID.899.) Dr. Richard Burke believed that the "only option left" to control Plaintiff's pain was neurostimulation. (PageID.900.) After undergoing this treatment, Plaintiff was "significantly improved" and was doing "extremely well." (PageID.869.) Dr. Burke noted that while Plaintiff had previously been unable to walk more than fifty yards without great difficulty, he had recently walked two miles to church. He had also reduced the medications he was taking. (PageID.869.) On November 18, 2013, Plaintiff told Dr. Hodgman that with the stimulator his pain rated between 2.5 and 3 on a scale of 0-10. He had experienced a fifty percent decrease in pain. (PageID.932.) Plaintiff's carpal tunnel syndrome was also described as "improved," though it appears Dr. Hodgman found this to be so because it was rested due to Plaintiff's lack of work. (PageID.927.)

While the evidence demonstrates that Plaintiff is not without pain, the records, especially those post-dating the doctor's opinion, demonstrates that Plaintiff's condition was not as debilitating as that found by Dr. Hodgman. Plaintiff's self-reported activities of daily living also support this conclusion. Plaintiff stated he was able to drive for thirty to forty minutes, do errands, dishes, laundry, and go shopping. He could sit for twenty to thirty minutes, then would need to stand for five minutes. (PageID.158, 163–64, 167.) This level of activity is inconsistent with Dr. Hodgman's opinion that Plaintiff could only sit, stand, or walk for a total of two hours out of an

eight hour workday.[4] Rather these activities are similar to an RFC for sedentary work with an at will sit/stand option. Accordingly, the ALJ provided good reasons, supported by substantial evidence, for giving Dr. Hodgman's opinion less than controlling weight.

Finally, the ALJ did not err, as Plaintiff argues, in applying the factors set forth in 20 C.F.R. § 404.1527 to Dr. Hodgman's opinion. (PageID.976.) While Plaintiff would apparently have the ALJ address each factor individually, Plaintiff points to no case law requiring an ALJ to perform such an analysis. Under section 404.1527(c), the ALJ is only required to "consider" the factors. The regulation does not require a "factor-by-factor" analysis. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804–05 (6th Cir. 2011); *see also Kostovski–Talevska v. Comm'r of Soc. Sec.*, No. 5:13–cv–655, 2014 WL 2213077, at *9 (N.D. Ohio May 28, 2014) (collecting cases); *Mayfield v. Comm'r of Soc. Sec.*, No. 1:12–cv–912, 2014 WL 1341923, at *11 (W.D. Mich. Mar. 31, 2014); *Owens v. Comm'r of Soc. Sec.*, No. 1:12–cv–47, 2013 WL 1304470, at *2 (W.D. Mich. Mar. 28, 2013). The record demonstrates that the ALJ recognized her responsibility under the regulations, noting that she had to consider opinion evidence in accordance with, among other things, 20 C.F.R. § 404.1527. (PageID.91.). The ALJ adequately considered the factors regarding

---

[4] Relying on *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2009), Plaintiff argues that the ALJ could not consider his activities of daily living in discounting Dr. Hodgman's opinion. (PageID.974–75.) In *Rogers*, the Sixth Circuit found that "somewhat minimal daily functions," such as driving, cleaning an apartment, caring for pets, doing laundry, doing stretches, reading, and watching the news, were "not comparable to typical work activities." *Id.* But *Rogers* is not applicable to the instant case as the language Plaintiff relies on concerns a credibility analysis, not a treating physician doctrine. It was entirely appropriate for the ALJ to consider these activities in assessing Dr. Hodgman's opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); 20 C.F.R. § 404.1529(a) & (c)(3)(i) (listing "daily activities" as among the "[f]actors relevant to your symptoms" and how they "affect your ability to work"); *see also Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (including the plaintiff's daily activities as among the "good reasons" for discounting the treating physician's opinion).

the opinion evidence, and specifically considered the doctor's opinions against the record as a whole. (PageID.96). The ALJ found that the proffered restrictions listed in Dr. Hodgman's opinion were not well supported by objective evidence and in doing so expressly considered several of the factors, including Dr. Hodgman's treating relationship with Plaintiff, the length of the relationship, the consistency of the opinion, and the supportability of the opinion. (PageID.93, 96.) In this, the Court finds no error. Plaintiff's first claim of error is rejected.

**2.**

Plaintiff next claims that the ALJ's RFC determination is unsupported by substantial evidence. Plaintiff cites to SSR 96-8p[5], and argues the ALJ failed to provide a narrative discussion in support of the RFC because the ALJ "failed to cite to any specific medical evidence" in arriving at her determination. (PageID.976–77.)

According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, . . . explain why the opinion was not adopted." *Id.*

---

[5] SSRs "are binding on all components of Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

The portion of the ALJ's opinion dealing with the RFC assessment spans seven pages and includes a summary of Plaintiff's testimony, the ALJ's credibility analysis, a discussion of the medical evidence, and a brief summary of the opinion evidence. After discussing these records the ALJ then concluded as follows:

> The residual functional capacity is supported by the claimant's history of treatment, the objective imaging studies, the clinical examination findings, the claimant's activities of daily living, and the opinions of Dr. Cilluffo and Dr. Newhouse.[6]

(PageID.97.)

The Court finds this narrative, combined with the detailed discussion of the medical evidence, to be sufficient and moreover finds that substantial evidence supports the ALJ's RFC decision. While Plaintiff would apparently prefer a more detailed analysis, that is not what is required by the Sixth Circuit. *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (finding that SSR 96–8p does not require ALJs to produce a detailed function by function statement in writing). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548. (citation omitted); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x. 719, 729 (6th Cir. 2013) (SSR 96–8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports h[is] conclusions").

Plaintiff claims that the ALJ improperly inferred the RFC from the lack of limitations provided by Dr. Cilluffo. (PageID.975, 977.) But the ALJ did no such thing. The ALJ did note that to the extent the Dr. Cilluffo's opinion was consistent with the RFC–for example a lifting

---

[6]Dr. Cilluffo is a treating physician, Dr. Newhouse is an agency consultant.

requirement of twenty five pounds–the opinion was given great weight. (PageID.95.) But there is no indication that the ALJ developed the rest of the RFC from Dr. Cilluffo's silence on other limitations. It appears Plaintiff is arguing the ALJ failed to identify a medical opinion to which he gave controlling weight. But an ALJ is not bound to rely on a single medical opinion in determining an RFC. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [their] residual functional capacity."); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ not a physician ultimately determines a claimant's RFC.")  It is the ALJ who has the ultimate responsibility for assessing a Plaintiff's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a). As the ALJ indicated, Dr. Cilluffo's opinion played only a part in determining Plaintiff's RFC. In arriving at the RFC decision the ALJ also considered Plaintiff's activities of daily living and treatment notes that indicated improvement after Plaintiff's surgery and neurostimulations.

   The ALJ discussed the evidence of record at length and explained how it supported her factual finding regarding Plaintiff's RFC. In so doing, the ALJ satisfied the discussion requirements. *See Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (finding the discussion element satisfied by analyzing medical evidence and assessing credibility); *Blevins v. Astrue*, No. 4:08–CV–87–PRC, 2009 WL 2778304, at *14 (N.D. Ind. Aug. 31, 2009) (same). Plaintiff's claim of error is accordingly rejected.

3.

   At the administrative hearing, Plaintiff testified that he could not work due to his carpal tunnel syndrome as well as back pain that he testified limited his ability to sit, stand, and

walk. (PageID.159–60.) The ALJ found that Plaintiff's subjective allegations were not fully credible. (PageID.95.) Plaintiff argues that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and

discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

As noted above, the record simply does not support Plaintiff's allegations. For example, as the ALJ recognized, Plaintiff did not follow recommended therapies for his carpal tunnel syndrome, indicating that he was not as limited as alleged. On October 5, 2010, Dr. Karen Meyer recommended that Plaintiff wear wrist splints until he had surgery on his wrists, however on September 7, 2012, before he had wrist surgery, Plaintiff admitted he had not worn splints for a year. (PageID.351, 859.) When Plaintiff finally had surgery on his right wrist, he described one hundred percent improvement in pain. (PageID.380.) Similarly, as noted in the above discussion of Dr. Hodgman's opinion, Plaintiff's surgeries reduced his back pain. With neurostimulation, he was able to walk two miles. Such is inconsistent with the Plaintiff's allegations.

Finally, Plaintiff's reliance on *Felisky v. Bowen*, 35 F.3d 1027, 1036–41 (6th Cir. 1994), is misplaced. While the court in that case noted Felisky's work history as one of the factors supporting credibility, *see id.* at 1041, it did not adopt a presumption of credibility based on that factor. "The Sixth Circuit has never held that a social security benefits claimant is entitled to a 'presumption of credibility.' It is the ALJ's function to determine credibility issues, and the claimant's work history is only one of the many factors that the ALJ can consider in making his credibility determination." *Barney v. Comm'r of Soc. Sec.* No. 1:08–cv–1225, 2010 WL 1027877, at *4 (W.D. Mich. Jan. 20, 2010) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); 20 C.F.R. § 404.1529), *report and recommendation adopted*, 2010 WL 1027867 (W.D. Mich. Mar.18, 2010). As noted above, there is substantial evidence supporting the ALJ's credibility determination, despite Plaintiff's work history.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.** A separate judgment shall issue.


Dated: July 13, 2016                    /s/ Janet T. Neff
                                        JANET T. NEFF
                                        United States District Judge